# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LAWREN FREEMAN,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　**CASE NUMBER:  6:17-cv-00938-GAP-GJK**

**SMARTPAY LEASING, LLC,**

    **Defendant.**
_____/

**PLAINTIFF'S REPLY TO DEFENDANT SMARTPAY LEASING, LLC'S OPPOSITION
TO PLAINTIFF'S MOTION TO LIFT STAY AND FOR SANCTIONS**

I.  **Smartpay's Arguments Suggesting This Case Should Be Sent To The American Arbitration Association Are Specious And A Sham.**

Smartpay has constructed what can only be described as a "strawman" argument as to the Plaintiff's objections to the AAA, making ludicrous assertions that the Plaintiff has viciously impugned the impartiality of the AAA when she has made no such statements. Indeed, the Plaintiff has no reason to think that the AAA has any particularized bias against her. Rather, the Plaintiff's decision (informed by Plaintiff's counsel's experience, of course) to select JAMS was occasioned by her view that, under the circumstances of her particular case, JAMS procedural rules pertaining to discovery are more favorable. It is Plaintiff counsel's belief that Smartpay is cognizant of these distinctions and has tried to force arbitration before the AAA for this reason.

While Smartpay's falsehoods regarding the Plaintiff's position are revealing, more telling is what Smartpay has chosen not to discuss. In particular, the Plaintiff specifically alleged that Smartpay's arguments regarding "cost sharing" were pretextual, noting the existence of an email from a JAMS administrator pointing out that the AAA had similar arbitration cost rules. (Doc. 16, p. 6). While that email was inadvertently not attached to the Plaintiff's motion due to a clerical error, Smartpay has been kind enough to provide it in one of its own exhibits. (Doc. 19-9, p. 3). To that end, the Court is urged to review the AAA Consumer Rules[1] attached as **Exhibit A** to this Reply, wherein it is noted on page 34 "that a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less" and on page 33 that "[t]he business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." As can be seen, these rules are <u>functionally identical</u>[2] to the JAMS

---

[1] Found at http://www.adr.org/sites/default/files/document_repository/Consumer%20Rules_0.pdf
[2] In fact, the amount that would be paid by the Plaintiff in total arbitration expenses under AAA rules would be $50 **less**, given the fact that JAMS caps a consumer's expense at $250 and the AAA at $200.

"Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness" (hereinafter referred to as "JAMS consumer minimum standards") that the Defendant complains so much about. Here, Smartpay was explicitly (and correctly) warned by JAMS that AAA had similar payment rules[4] and was provided with a month to pay JAMS after this notification. The only conclusion that can be reached from Smartpay's persistence with its position is that it wished to invalidate the Plaintiff's selection[5] of JAMS and force the arbitration before the AAA for some reason that has not been disclosed to the Court. To put it in other words, the very premise of all of Smartpay's arguments, namely the supposed materiality of JAMS' cost rules, is clearly a <u>sham</u>. Sanctions are warranted.

**II.     JAMS Most Certainly Did Not Refuse To Arbitrate This Case, Nor Was It An "Unavailable" Forum.**

Smartpay's assertion that JAMS refused to arbitrate this case is trivially easy to debunk. Indeed, one need only look at JAMS order dismissing the arbitration case to refute this argument, as it states the following:

> The arbitration of the above matter was submitted to JAMS on August 18, 2017. JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness apply to this case. We have made multiple

---

[4] Notably, Smartpay contends that JAMS' consumer minimum standards, which impose the $200 cap on consumer expenses, do not qualify as "rules." While the Plaintiff disagrees with this assertion, it should be noted that the provisions effectively capping a consumer's expense at $200 for a AAA arbitration are indisputably "rules," as they appear directly within its consumer rules. Furthermore, given these rules, it is evident that AAA will have the exactly the same reaction as JAMS to Smartpay's position. If this case is submitted to the AAA, either 1) Smartpay will either have to waive its objections to the allocations of costs, which is likely because its arguments are pretextual, or 2) the AAA will close the arbitration for non-payment as JAMS did, which will put the case back in Court. The first scenario should not be allowed to occur because the Plaintiff will have been purposelessly deprived of her contractual right to choose the arbitration organization. The second should be disallowed because it is a waste of this Court's and the litigants' time.

[5] Smartpay argues that the provisions in the arbitration agreement allowing the Plaintiff to select JAMS over AAA are not "essential" and therefore should be disregarded. Of course, Smartpay fails to acknowledge the corollary, namely that the same question of "essentialness" could be raised as to the supposed "cost sharing" provisions that all of its arguments rely upon. Not surprisingly, Smartpay, acting unilaterally as its own arbitrator, elected to favor its own position with regards to this balancing of interests. It should also be noted that Smartpay, if its arguments are accepted as truthful, seeks merely to save a few thousand dollars, an expense that would not have been incurred at all if litigation in this Court had not been interrupted by its demand for arbitration.

>   requests for the full payment of the filing fee from the Respondents, which is required to commence the proceedings. As of today it remains unpaid and as such the arbitration file will be closed effective October 19, 2017.

(Doc. 16-2). If JAMS had refused to arbitrate this case, quite obviously it would not have made "multiple requests for the full payment of the filing fee." Moreover, if SmartPay's assertion that it "was at all times prepared to pay the entirety of Plaintiff's filing fee, as required under the cost-sharing provision in the Lease Agreement," was accurate, Smartpay would not have failed to respond to "multiple requests" for payment by JAMS. How Smartpay can argue that its failure to pay this filing fee was anything other than a breach of the arbitration agreement boggles the mind, as payment of the filing fee is <u>something Smartpay expressly agreed to do</u>, stating in the arbitration agreement that "[i]f you file a claim against us, we will pay the initial filing fee." While Smartpay complains vociferously about supposed extra-contractual costs that it *might* ultimately have been forced to bear *if* its "cost sharing" arguments were rejected by the arbitrator, the irony is that it did not even pay the particular item of expense that it specifically and indisputably agreed to. Furthermore, Smartpay's "my way or the highway" or "heads I win, tails you lose" approach, wherein it used the power of its purse to unilaterally rule by fiat on an arbitrable[6] issue, was an action utterly inconsistent with arbitration and Smartpay knows it.

As a final note on this issue, Smartpay's statement that "Florida courts have long made clear that the fact that an ADR provider referenced in a contract is <u>no longer</u> willing or able to administer a dispute provides no grounds for evading arbitration" is quite illuminating, though not for the reasons argued by Smartpay. (Doc. 17, p. 2, emphasis added). What Smartpay leaves out is that JAMS' consumer minimum standards are nothing new, as they first became effective on

---

[6] The arbitration agreement specifies that "any claim or dispute in any way related to the Agreement" is subject to arbitration. This would obviously apply to apply to every issue raised by Smartpay in this case, including Smartpay's contention that JAMS policies or rules as to payment of costs are in conflict with the arbitration agreement as well as its position that JAMS' consumer minimum standards did not apply.

July 15, 2009.[7] Indeed, the parties' contract was executed approximately six years after the imposition of these standards. In light of Smartpay's contention that it will not abide by JAMS' longstanding consumer minimum standards even though its contracts ostensibly providing the option to use JAMS clearly involve consumer matters, the question arises as to whether the provision in the arbitration agreement allowing consumers to select JAMS was illusory or fraudulent at the outset. Clearly this is not helpful to Smartpay's position in any way.

**III.    There Is No Conflict Between JAMS Consumer Standards And The Costs Provision In The Arbitration Agreement.**

In this case, it is not at all surprising that Smartpay declined to present its arguments regarding what it calls the "cost sharing provision" to the arbitrator, as these arguments have no merit. The costs provision in the arbitration agreement, which merely provided that the Defendant would pay the "initial filing fee" and that "[e]ach party must pay its own attorneys' fees and other costs of the arbitration," hardly supports the strident assertions that Smartpay has made throughout the arbitration proceedings and before this Court. Indeed, as was noted in the Plaintiff's original motion, this language is in no way inconsistent with an allocation of costs by arbitral rule. Furthermore, there can be no question that the costs provision is at a minimum replete with ambiguity, meaning that, among all reasonable interpretations of this provision, the one that most favors the Plaintiff is the one that is applicable.[8] With respect to this case, it is certainly reasonable to conclude that the sum of Smartpay's "own . . . other costs of arbitration" pursuant to the consumer standards would have been all of the arbitral costs less $250. This conclusion is only

---

[7] *See* http://www.jamsadr.com/consumer-minimum-standards/(noting that the standards became "Effective July 15, 2009.")

[8] See, e.g,, *First Texas Sav. Ass'n v. Comprop Inv. Properties Ltd.*, 752 F. Supp. 1568, 1571 (M.D. Fla. 1990)("Under federal law, a party who drafts an agreement can expect to have ambiguities contained in the agreement construed against him and in favor of the non-drafting party.")

further bolstered by the fact that this is the only way to give the contractual option to select JAMS any meaning given the longstanding existence of JAMS' consumer standards.

IV. **Smartpay Did In Fact Have The Option To Bring Its Arguments Before An Arbitrator.**

Smartpay's arguments that JAMS refused to arbitrate this case are predicated on a clearly false premise. Here, Smartpay alleges that "[i]t is difficult to imagine a more definitive statement" than JAMS' statement that Smartpay was required "waive the provisions which are contrary to our Minimum Standards." However, the <u>very next sentence</u> made it clear that JAMS acknowledged that this issue could be revisited by the arbitrator, stating "[t]he Parties are also free to raise any additional questions regarding the Minimum Standards with the arbitrator, once appointed, and may participate in any strike and rank process *without waiving any objections*." (emphasis added) To put it simply, Smartpay is asking the Court to interpret the "waiver" language in isolation and without construing in it *in pari materia* with obviously relevant, language that made it clear that the arbitrator would be empowered to address all of Smartpay's arguments. Notably, Smartpay's only response to this obvious problem is to suggest an obtuse and unreasonable interpretation of "additional questions" such that such "questions" would include only other matters, a position that is manifestly deficient in light of the additional statement that Smartpay could proceed "without waiving any objections." Lastly, Smartpay's assertion that the arbitrator would not have authority on this issue is clearly also nonsense from a legal perspective, as the Federal Arbitration Act "confers near plenary authority on an arbitrator to resolve a dispute given to him by an arbitration agreement." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016).

**WHEREFORE** the Plaintiff respectfully requests that this Court grant Plaintiff's Motion [Doc. 16]. Furthermore, a finding of entitlement to sanctions is also respectfully requested and any further relief as the Court deem just and proper.

Respectfully submitted,

*s/ Amanda J. Allen*
   **Amanda J. Allen, Esq**.
   Florida Bar No.:  0098228
   THE CONSUMER PROTECTION FIRM
   210-A South MacDill Avenue
   Tampa, FL 323609
   Telephone: (813) 500-1500
   Facsimile: (813) 435-2369
   Amanda@TheConsumerProtectionFirm.com
   *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system this 14th day of December, 2017, to all parties of record.

Respectfully submitted,

*s/ Amanda J. Allen*
   Amanda J. Allen, Esq..
   Florida Bar No.:  0098228
   THE CONSUMER PROTECTION FIRM