## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LAWREN FREEMAN,**

      **Plaintiff,**

                                      **CASE NO.: 6:17-cv-00938-GAP-GJK**

-vs-

**SMARTPAY LEASING, LLC,**

      **Defendant.**

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY OR IN THE ALTERNATIVE APPEAR TELEPHONICALLY [DOC 27]

---

COMES NOW Plaintiff, Lawren Freeman, and hereby submits her Memorandum of Law in Opposition to Defendants' Motion to Stay Action, or in the Alternative, Motion for Leave to Appear by Telephone[Doc. 27]. For the reasons contained herein, Plaintiff respectfully requests that the Court deny the Defendant's Motion.

### I.     INTRODUCTION AND FACTUAL BACKGROUND

On June 7, 2017, the Plaintiff, Lawren Freeman, filed an Amended Complaint against Defendant for placing approximately 250 harassing and unwanted calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) (the "TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") [Doc. 6].  The claims against the Defendant arise from the Defendant placing telephone calls using an automatic telephone dialing and/or dialer system to Plaintiff's cellular telephone number without her prior express consent and continuing to place calls despite the Plaintiff demanding an end to the harassment [Doc. 6]. Despite eight months having passed since serving the Defendant with the lawsuit, not a single iota of

discovery has been served, and not once has the Defendant addressed the merits of the current suit. Instead, after having received the referral of this case to arbitration that it itself demanded, the Defendant then claimed it was dissatisfied with the allocation of costs provided by arbitral rules and refused to pay them, resulting in the Court finding that the Defendant "had breached the Arbitration Agreement and waived its right to compel arbitration." [Doc. 24, p. 2]. Now, the Defendant seeks a stay of these renewed judicial proceedings by arguing, essentially, that its own refusal to participate in the arbitration as set forth in its own arbitration agreement earns it the right to delay this litigation even further until the resolution of its appeal of this Court's Order.

## II.    ARGUMENT

### A.    The Defendant's Motion For A Stay Should Be Denied.

In its motion, the Defendant argues that its notice of appeal has divested this Court of any authority to preside over continued litigation of this action, relying *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1250 (11th Cir. 2004)("*Blinco*").[1]   However, this case is in a substantially different procedural posture than *Blinco*, a case where a motion to compel arbitration was denied. In this case, the Plaintiff in fact acquiesced to an order compelling arbitration but was forced to come back to the Court when the Defendant refused to pay arbitration costs in a manner consistent with the chosen arbitration organization's rules, resulting in the termination of the arbitration. Furthermore, the Court concluded that the Plaintiff's submission of the case to arbitration, notwithstanding its premature termination resulting from the Defendant's non-payment, meant

---

[1] It should be noted that the Defendant relies upon a jurisdictional theory and does not appear to argue that its motion for a stay would qualify under the factors traditionally considered in determining whether to grant a stay pending appeal, namely (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the Movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest. *Isaly Co. v. Kraft, Inc.*, 622 F. Supp. 62, 62–63 (M.D. Fla. 1985), citing *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981).

"that the arbitration underlying the stay 'has been had in accordance with the terms of the agreement.'" [Doc. 24, p. 3]. Here, the Defendant does not seek an initial opportunity to resolve this dispute via arbitration as was the case in *Blinco*, but rather seeks an unwarranted second bite at the arbitration apple. This distinction heavily weighs against a stay.

It is also crucial to note that the *Blinco* decision contains an important exception for "frivolous" appeals. *Blinco*, 366 F.3d at 1253. In this case, the Defendant's appeal simply cannot be described as anything other than frivolous. Indeed, Defendant's own characterization of what it intends to argue in the appeal, "that prior to the JAMS' dismissal – allegedly for 'nonpayment' – JAMS informed the parties it had declined to arbitrate the matter" and "that one hand of JAMS did not know what the other hand was doing" [Doc. 27, p. 4], is sanctions-worthy nonsense that finds absolutely no support in the record. Furthermore, the Defendant's argument fails to address other crucial matters such as the fact that American Arbitration Association ("AAA") has almost identical cost-allocation rules, meaning that the relief that the Defendant has requested, submission of the case to the AAA, would result in the same cost-allocation controversy[2] and payment standoff if the Defendant was being honest about its reasons for failing to pay JAMS, which it was clearly not.[3] Also, the Defendant fails to confront the fact that it was offered the opportunity to pay JAMS

---

[2]    It is ironic that the Defendant argues that "[i]f this Court does not stay the instant litigation pending resolution of the appeal, the appeal will effectively be rendered moot and the entire purpose of the parties' arbitration provision – to reduce costs of resolving the dispute – will have been frustrated." [Doc. 27, p. 3-4]. Here, the dispute over arbitration expenses amounts to, at most, a few thousand dollars, i.e. the half of the total arbitration expense in this case, minus the filing fee, that the Defendant claims the Plaintiff should pay. However, the Defendant has chosen to expend a significant multiple of this amount in attorney time to argue this issue and intends to compound this expense even further through its appeal. This only reinforces the obvious conclusion that the Defendant's purported reasons for this dispute are a farce. The true reasons for the Defendant's actions are a desire for delay and for forum-shopping. Granting a stay will only further these objectives and reward the Defendant's misconduct.

[3]    Plaintiff's counsel did not lightly make the allegation of a "sham," [Doc. 22, p. 3] but it seemed entirely appropriate given the AAA cost-allocation rules that the Defendant was explicitly asked by JAMS to review prior to termination of the JAMS arbitration proceeding for non-payment. [Doc. 19-9, p. 3]

"without waiving any objection" and make its cost allocation arguments before the arbitrator, but failed to do so.  It thus unambiguously acted inconsistently with the arbitration agreement by refusing to arbitrate a dispute within the scope of the arbitration agreement.  To sum this all up, the odds of success of the Defendant's appeal approach zero.

In light of the above, the Plaintiff would respectfully request that this Court reject the requested stay on the grounds that the appeal, like the underlying arguments made before this Court in this case, is frivolous.  Significantly, the Defendant would not be without remedy in this instance but could request immediate relief as occurred in *Blinco*.  This would give the Eleventh Circuit an early opportunity to observe the lack of merit in this appeal, hopefully speeding resolution of the matter.  The alternative, granting a stay, would reward the Defendant for its outrageous behavior in this case with likely a year or more of delay, to the Plaintiff's great prejudice.[4]  As the Court is aware, the Defendant has engaged in similar conduct in other cases, meaning that multiple other plaintiffs could be also affected.

As a final note, the Defendant's Motion to Stay is also improper because the Defendant failed to comply with Local Rule 3.01g.  The Defendant did not confer with undersigned regarding its Motion to Stay. Rather, the Defendant asked if the undersigned would "agree to an unopposed motion to allow for a telephonic appearance" at the case management conference. While the Defendant correctly anticipated that Plaintiff's counsel would object to a stay, there was never a discussion as to Defendant's request to stay the case as required by Local Rule 3.01(g).  This may be an additional ground upon which the Court could deny a stay.

---

[4]      With the passage of time and continued delays, witnesses' recollections are fading, records are being lost and the evidence of Defendant's illegal conduct are being lost to time.  Furthermore, although Defendant has a duty to preserve evidence relevant to this case, third-parties such as cellular telephone providers, have no such obligation.  Many cellular telephone providers delete call histories on a rolling basis and with each delay more and more evidence is potentially lost. Such evidence is often crucial in TCPA cases.

**B. Defendant Should Not be Allowed to "Phone-In" for the Rule 26 Case Management Conference.**

While Plaintiff's counsel is ordinarily inclined to extend professional courtesy whenever possible, the Defendant's conduct in this case is best characterized as an obstinate refusal to play by the rules. The Defendant refused to participate in the arbitration outlined in its own agreement, refused to pay the fees as required by JAMS, ignored its duty to confer in good faith and now does not want to have to attend an "in person" case management conference as required by this Court. The circumstances of this case reflect a sensitive situation where little of the conflict resolution ordinarily expected by the Court from counsel has occurred.

Plaintiff's counsel also believes an in-person meeting of the parties provides certain beneficial qualities that are otherwise lacking; presumably that is why the Court, in its discretion, requires certain proceedings be conducted in person, such as mediations, pre-trial conferences, etc. In undersigned's experience, a face to face meeting not only minimizes the nit-picking which can easily occur when conversing through electronic or telephonic means, but lessens the likelihood of misunderstanding, and can often facilitate resolutions.  In a case, such as this one, where the merits of the case have yet to even be discussed, despite the case having been being filed eight months ago, cutting corners when setting a plan for the management of discovery and proceedings in the case does not seem well-advised.

### III.   CONCLUSION

WHEREFORE, Plaintiff respectfully requests Defendant, SmartPay Leasing's Motion Stay Pending Appeal, or in the alternative, Motion for Leave to Appear Telephonically be denied and for all other relief this Court deems just and proper.

Respectfully submitted,

s/ Amanda J. Allen
    Amanda J. Allen, Esq.
    Florida Bar No.:  0098228
    THE CONSUMER PROTECTION FIRM
    4030 Henderson Blvd
    Tampa, FL 323629
    Telephone: (813) 500-1500
    Facsimile: (813) 435-2369
    Amanda@TheConsumerProtectionFirm.com
    *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed via the

Court's CM/ECF system this 16th day of February, 2018, to all parties of record.

Respectfully submitted,

s/ Amanda J. Allen
    Amanda J. Allen, Esq..
    Florida Bar No.:  0098228
    THE CONSUMER PROTECTION FIRM