UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| LAWREN FREEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SMARTPAY LEASING, LLC,<br><br>    Defendant. | Civil Action No. 6:17-cv-00938-GAP-GJK |

**SMARTPAY'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

Defendant, SMARTPAY LEASING, LLC ("Smartpay"), hereby submits its Response in Opposition to Plaintiff's Motion to Dismiss Counterclaim and in support thereof, states as follows:

**INTRODUCTION**

Plaintiff Lawren Freeman ("Freeman") moves to dismiss the counterclaims filed by Defendant SmartPay Leasing, LLC ("SmartPay"), arguing that the Court should decline to exercise supplemental jurisdiction over the claims because they would predominate over Freeman's claims under the Telephone Consumer Protection Act ("TCPA"), Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA"). Freeman relies upon decisions which have an appealing facial similarity to the case at bar – a primary TCPA claim and contractual counterclaims -- but which differ in one critical respect. In those cases, the principal basis upon which the courts declined to exercise supplemental jurisdiction was that trial of the contractual counterclaims would predominate over the TCPA

claims due to the complex defenses asserted by plaintiff to those claims. Here, Freeman goes on at length to describe the holdings and findings of these prior cases, but nowhere does she assert that ***she has any defense at all*** to the contractual counterclaims. In the absence of any defenses to the counterclaims, the only proof required to establish the counterclaims is the validity of the contract and Freeman's failure to pay. However, SmartPay will defend against Freeman's affirmative claims by showing that she consented to be contacted by telephone under the contract she signed and under which she owes the debt that SmartPay was attempting to collect. As a result, regardless of whether the contractual counterclaims were present, SmartPay would present evidence of the validity and terms of the parties' agreement, including Freeman's nonpayment. The only additional evidence required to prove up SmartPay's counterclaims is Freeman's payment history – evidence that will take all of ten minutes to present and as to which Freeman has asserted no defense. In these circumstances, there is quite plainly a common nucleus of facts and it would constitute an incredibly wasteful and unwarranted use of judicial and party resources to dismiss SmartPay's counterclaims and require SmartPay to pursue a separate lawsuit to collect on the debt – litigation that would duplicate the evidence that SmartPay will introduce here in defense of Freeman's claims. For these reasons, the Court should exercise its discretion to retain jurisdiction over SmartPay's counterclaims. In the event the Court were to grant Freeman's motion, SmartPay requests leave to amend its counterclaims to establish jurisdiction.

## BACKGROUND

SmartPay purchases equipment, such as smartphones, and makes it available to customers on a lease-to-own basis. SmartPay enters into a written Lease-Purchase Agreement with every customer. [Doc. 18, at ¶ 3]. Freeman entered into a lease agreement with BillFloat,

Inc.[1], which was digitally signed by Freeman on February 03, 2015 at 09:49:20 AM. ("Lease Agreement") [Doc. 18 at ¶ 5, Ex. A, p. 5 of 12.]

This action arises out of Freeman's claims that Smartpay violated the TCPA, FCCPA and FDCPA by calling Freeman using an automatic telephone dialing system ("ATDS") after she allegedly revoked her consent to be called. [*See generally,* Doc. 11[2]]. Freeman admits that said telephone calls related to an attempt to collect a debt from her. [*Id.*, ¶ 23].

SmartPay filed an answer denying Freeman's claims and asserting that Freeman consented to be called on her mobile telephone under the terms of the Lease Agreement. [*See generally,* Doc. 42[3]]. At the same time, SmartPay filed counterclaims asserting that Freeman breached the Lease Agreement by failing to make agreed upon payments in exchange for the use of a Samsung Galaxy S5, (the "Counterclaim"). *Id*. There is no dispute that Freeman entered into the Lease Agreement with SmartPay and in fact, Freeman previously agreed to arbitration pursuant to the express terms of said Lease Agreement. [Doc. 48, ¶ 2[4]].

The breach of the Lease Agreement and the telephone calls directly related to same are so intertwined as to warrant this Court to exercise supplemental jurisdiction of the Counterclaim.

---

[1] SmartPay was formerly a division of BillFloat, Inc. BillFloat spun off the SmartPay business into a separate company and assigned certain BillFloat lease agreements, including the Lease-Purchase Agreement between BillFloat and Plaintiff Lawren Freeman to SmartPay. Hereafter, the term SmartPay shall refer collectively to SmartPay and BillFloat. [Doc. 18, ¶ 4].

[2] Freeman's Amended Complaint

[3] SmartPay's Answer, Affirmative Defenses and Counterclaim

[4] Freeman's Motion to Dismiss

## ARGUMENT

### A.  Whether The Counterclaim Is Permissive Or Compulsory Is Irrelevant To A Supplemental Jurisdiction Analysis.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Courts automatically have supplemental jurisdiction over compulsory counterclaims." *Vernell v. Nuvell Credit Co. LLC*, No. 2:15-cv-674-FtM-38MRM, 2016 WL 931104, *3 (M.D. Fla. March 11, 2016). Freeman argues that SmartPay's Counterclaim is permissive, and "otherwise fails to retain any independent basis for this Court's jurisdiction." [Doc. 48, ¶ 8]. However, this Court has recognized that:

> "§1367 supersedes case law in supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims. The statute's plain text does not distinguish or limit jurisdiction over counterclaims, though it imposes other limits. And as the Supreme Court observed [in *Exxon Mobile Corporation v. Allapattah Services, Inc.,* 545 U.S. 546, 558–59, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ], 'nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary.' Thus § 1367 abolishes the conceptual framework underpinning the old compulsory-permissive counterclaim distinction."

*James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications Inc.*, No. 3:07-cv-598-J-32MCR, 2011 WL 2448911, *2 (M.D. Fla. March 28, 2011) *citing Global NAPS, Inc. v. Verizon New England, Inc.*, 603 F.3d 71, 87 (1st Cir. 2010). An Eleventh Circuit court further examined the test for supplemental jurisdiction as it relates to permissive counterclaims in *Bakewell v. Federal Financial Group, Inc.*, No 1:04-cv-3538-JOF, 2006 WL 739807 (N.D. Ga. March 2, 2006). The *Bakewell* court stated that "the standard for asserting supplemental jurisdiction ***is broader*** than the standard for determining a counterclaim to be compulsory." *Id*. at

\*3 (emphasis added). The *Bakewell* court further explained that a counterclaim must "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim" to be considered compulsory; whereas, a counterclaim must only be "related to claims in the action to fall under the supplemental jurisdiction umbrella." *Id*. Accordingly, this Court may exercise supplemental jurisdiction over SmartPay's Counterclaim if it "forms part of the same case or controversy as the plaintiff's claims." *James D. Hinson Elec. Contracting Co., Inc.*, 2011 WL 2448911, at \*2.

"The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative facts with a substantial federal claim." *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997). "In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *James D. Hinson Elec. Contracting Co., Inc.*, 2011 WL 2448911 at \*2 *citing Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996). This Court has specifically held that a TCPA claim and a counterclaim for breach of contract generally "arise from a common nucleus of operative fact, the Plaintiff's debt." *Vernell*, 2016 WL 931104 at \*3. This Court has also acknowledged that FDCPA and FCCPA claims with a corresponding breach of contract counterclaim similarly "arise from a common nucleus of operative fact, the plaintiff's debt." *Thomas v. Commercial Recovery Sys., Inc.*, No. 8:07-cv-1104-T-23MAP, 2008 WL 906770, \*1 (M.D. Fla. April 1, 2008).

Here, SmartPay's Counterclaim arises from and would involve the same facts, witnesses and evidence as Freeman's claims. Freeman entered into the Lease Agreement with SmartPay whereby she rented a Samsung Galaxy S5. [Doc. 42, ¶ 8 and Ex. 1]. Pursuant to the Lease

Agreement, Freeman was required to pay $132.91 as an initial payment and an additional $156.56 each month for eight consecutive months in exchange for use of the Samsung Galaxy S5. [Doc. 42, ¶¶ 9-10 and Ex. 1]. In the event payment was not made pursuant to said Lease Agreement, SmartPay has the right to immediate possession of the property. [Doc. 42, ¶¶ 11-12 and Ex. 1]. Upon breach of said Lease Agreement, SmartPay attempted to collect on the debt by attempting to contact Freeman via telephone. These telephone calls, that would not have occurred but for Freeman's breach of the Lease Agreement, form the basis of Freeman's claim. Furthermore, SmartPay will show at trial that Freeman consented to be contacted by telephone under that same Lease Agreement.  Therefore, the case will already require evidence of the formation and validity of the Lease Agreement.  The only additional evidence that will need to be introduced is Freeman's short payment history.[5] Finally, the key witnesses to both Freeman's claim and SmartPay's Counterclaim are Freeman and SmartPay.[6]

**B.     SmartPay's Counterclaim Would Not Predominate Over Freeman's Claims.**

Pursuant to 28 U.S.C. § 1367(c), a district court has discretion to decline supplemental jurisdiction under four circumstances[7]: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court

---

[5] SmartPay notes that the Lease Agreement was executed in February of 2015 and Freeman stopped making payments in or around June of 2015, amounting to approximately four (4) months of payments.

[6] SmartPay anticipates that Freeman will argue that expert witnesses are required regarding the TCPA claim and whether SmartPay's phones qualify as ATDS; however, whether the phones fall within the definition of ATDS is a legal conclusion, upon which an expert cannot opine. *See Strauss v. CBE Group, Inc.*, No. 15-62026-CIV-Cohn/Seltzer, 2016 WL 2641965, *2 (S.D. Fla. March 23, 2016)("Because [the expert] may not offer a conclusion as to the legal definition of an ATDS, or the legal implications of using a predictive dialer, the Court will exclude the portions of the Report stating that CBE used an ATDS and that the equipment used to call Plaintiff fits within the statutory definition of an ATDS").

[7] None of which involves whether a counterclaim is compulsory or permissive.

has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C.A. § 1367(c). Freeman argues (without any factual support) that subsection 2 of 28 U.S.C. § 1367(c) applies – that SmartPay's Counterclaim would predominate over the TCPA, FCCPA and FDCPA claims.[8]

Freeman cites to *Vecchia v. Ally Financial, Inc.*, No. 8:17-cv-2977-T-23-AAS, 2018 WL 907045 (M.D. Fla. Feb. 15, 2018) and *Haire v. Tampa Truck Driving School, Inc.*, No. 8:18-cv-711-T-26MAP, 2018 WL 2763305 (M.D. Fla. June 8, 2018) for the proposition that "a permissive breach of contract counterclaim will predominate over a TCPA claim."[9] [Doc. 48, p. 9]. Those cases stand for no such sweeping proposition and are distinguishable from the instant case. *Vecchia* involved a more complex breach of contract counterclaim that the court feared "might devolve into a dispute about Ally's compliance with the Florida law governing the repossession and the re-sale of a vehicle…" *Vecchia*, 2018 WL 907045, at *1. In *Haire*, the court stated:

> While the counterclaim in this case would not deteriorate into a dispute about whether the parties complied with Florida law governing the repossession and re-sale of vehicles, as in *Vernell* or *Vecchia*, the case might well become bogged down in a dispute over conceivable defenses to the breach of contract claim for the tuition loan.

*Haire*, 2018 WL 2763305 at *2. In *Haire*, the counterclaim involved the alleged breach of a service contract relating to tuition for truck driving school and there was no assertion by the defendant that *Haire* had consented to be contacted in relation to the debt, by way of the contract

---

[8] Subsections 1, 3 and 4 do not apply here, nor were they argued by Freeman.

[9] Freeman also cites to *Dayhoff v. Wells Fargo Home Mtg., Inc.*, No. 6:13-cv-1132-Orl-37KRS, 2014 WL 466151 (M.D. Fla. Feb. 5, 2014) which provides ***no legal analysis*** as to why the counterclaims at issue in that case would predominate over the TCPA claim.

7

or otherwise.[10] In declining supplemental jurisdiction, the *Haire* court acknowledged that other district courts in the Eleventh Circuit have reached precisely the opposite conclusion, but determined that on the facts of that case, the counterclaim would likely predominate. *Id.* at fn 2 (*citing, e.g., Hunt v. 21st Mortg. Corp.*, 2012 WL 3903783 (N.D. Ala. Sept. 7, 2012)). Here, SmartPay asserts that Freeman consented by way of the Lease Agreement and a determination of whether Freeman made payments thereunder is a rather simple and straightforward affair. Furthermore, although SmartPay acknowledges that Freeman has not admitted to breaching the Lease Agreement at this stage, Freeman *does* acknowledge that SmartPay was attempting to collect a debt and has never contested the validity of that debt nor asserted any affirmative defenses to it. [Doc. 11, ¶ 23].

Furthermore, "when one or more of these [28 U.S.C. § 1367(c)] factors is present, the court may also consider judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. *James D. Hinson Elec. Contracting Co., Inc.*, 2011 WL 2448911, at *6 (internal citations and quotations omitted). Had Freeman not breached the Lease Agreement, there would be no TCPA, FCCPA or FDCPA claim. Freeman relies on a Tennessee case, *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018)[11] for the general proposition that "asserting jurisdiction over [the] state law counterclaim would undermine the remedial purpose of the TCPA and its goals of protecting consumers…" [Doc. 48, pp. 9-10]. However, this Court has allowed breach of contract counterclaims to proceed in consumer protection cases because "considerations of fairness and judicial economy require adjudication of the counterclaim." *Thomas*, 2008 WL 906770, at *1. Additionally, not only is it

---

[10] *See* Doc. 12 in *Haire (*Case 8:18-cv-711-SCB-SPF)

[11] *Ammons* was cited to by this Court in *Haire* but is merely dicta.

"inherently more efficient to deal with both matters in one consolidated action, [but] to bar Defendant's counterclaim would be to favor one litigant's claim over another, a practice courts should not engage in." *Bakewell*, 2006 WL 739807, at *4.

As discussed above, the key piece of evidence and witnesses are identical to both Freeman's action and the Counterclaim. It would be fair and economical to try both matters together as they stem from the same core issue – Freeman's debt. Accordingly, this Court should exercise its supplemental jurisdiction and allow SmartPay's Counterclaim to proceed before this Court.

## CONCLUSION

WHEREFORE, Defendant, SMARTPAY LEASING, LLC, respectfully requests this Court enter an Order denying Freeman's Motion to Dismiss, awarding SMARTPAY LEASING, LLC its reasonable attorneys' fees and costs in connection with this motion, and granting SMARTPAY LEASING, LLC such other further relief as the Court deems just and proper.

Dated this 26th day of July, 2019.

                **BRYAN CAVE LEIGHTON PAISNER LLP**
                *Counsel for Defendant*
                200 S. Biscayne Blvd., Ste. 400
                Miami, Florida 33131
                Phone: (786) 322-7500
                Fax: (786) 322-7501
                Email: zina.gabsi@bclplaw.com

                By: ____/s/ Zina Gabsi_____
                      Zina Gabsi
                      Florida Bar No. 73789

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| LAWREN FREEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SMARTPAY LEASING, LLC,<br><br>    Defendant. | Civil Action No. 6:17-cv-00938-GAP-GJK |

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing **SMARTPAY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** has been served by e-mail on the following counsel of record:

Amanda J. Allen
William "Billy" Peerce Howard
THE CONSUMER PROTECTION FIRM
210-A MacDill Avenue
Tampa, FL 33609
Amanda@TheConsumerProtectionFirm.com
Shenia@TheConsumerProtectionFirm.com

This 26th day of July, 2019

        /s/ Zina Gabsi
Zina Gabsi
Florida Bar No. 073789
BRYAN CAVE LEIGHTON PAISNER LLP
200 South Biscayne Blvd., Ste 400
Miami, FL 33131
Tel: (786) 322-7500
Email: zina.gabsi@bclplaw.com

*Counsel for Defendant SmartPay Leasing, Inc.*